LEONARD v. HELMS PRINTING COMPANY.

4-3249

Opinion delivered November 13, 1933.

Hal L. Norwood, Attorney General, and Pat Mehaffy, Assistant, for appellant.

Ned Stewart, for appellee.

SMITH, J. This is an appeal from an order of the Pulaski Circuit Court awarding a writ of mandamus directing the State Treasurer to pay three certain warrants held by petitioners, who published the journals of the House and Senate of the regular session of the 48th

General Assembly and the journals of the first and second extraordinary sessions of that body.

Funds to pay for these publications were not available, and certificates were issued by the State Auditor for the amounts due therefor. This was done pursuant to the authority of § 4463, Crawford & Moses' Digest, which provides that, "in all cases where the law recognizes a claim for money against the State, and no appropriation shall be made by law to pay the same, the Auditor shall audit and settle such claim, and give the claimant a certificate of the amount thereof, under his official seal, if demanded, and report the same to the Governor, who shall lay the same before the General Assembly." Certificates thus authorized were issued for the publication of each of these three journals.

At the ensuing 49th session of the General Assembly, there was passed an act No. 5 (Acts 1933, page 13), entitled: "An act to reduce the cost of operating the several departments, institutions and agencies of the State of Arkansas, to place each of them on a cash basis of operation, to provide for the issuance of certain evidences of indebtedness in payment of outstanding obligations, and for other purposes."

Section 4 of this act found and declared the fact to be "that the revenues of the State are insufficient to discharge the obligations now owing and at the same time to carry on the essential departments of the government." After thus reciting the reason for the legislation, it was enacted, in the same section, that "all unexpended balance in, and moneys accruing to, the General Revenue Fund from and after the passage of this act shall be, and are hereby, impounded and all thereof except the portion going into a sinking fund as herein provided are hereby set apart and dedicated to the payment of the current expenses of the various departments of the government, to the end that the State may operate on a cash basis and within the limits of its income, and that the outstanding obligations may be retired in an orderly manner." This act was approved January 27, 1933.

There was passed at the same session act 229, approved March 28, 1933 (Acts 1933, page 706), which made the following appropriations: $11,104.70 to pay for printing the journals of the regular session; $1,430 to pay for printing the journals of the first extraordinary session, and $1,755.80 to pay for printing the journals of the second extraordinary session. It was specifically provided that each of these sums should "be paid from the sinking fund authorized by act No. 5 of the Forty-ninth General Assembly," set out above.

To make act 5 effective, another section thereof provided that: "For the purpose of retiring the obligations of the State of Arkansas payable from the general revenue fund, the Treasurer of State shall, on and after July 1, 1933, provide a sinking fund into which he shall place twenty per cent. of all moneys accruing to the general revenue fund from all sources. Said sinking fund shall be used solely for the retirement of warrants and obligations outstanding against the general revenue fund on January 10, 1933."

It was the opinion of the court below that the act 229 required the payment preferentially of petitioners' claims without reference to other claims payable out of the sinking fund authorized by act 5, and upon that theory the writ of mandamus was awarded.

The question for decision is therefore whether it was the intention of the General Assembly, in enacting act 229, to pay the warrants there authorized out of the first moneys accruing in the sinking fund, or to place the holders thereof along and in a class with the holders of other warrants and obligations which accrued prior to January 10, 1933, and enable the holders thereof to exchange the certificates of indebtedness for the bonds which act 5 authorized.

It is apparent that these acts, passed at the same session of the General Assembly and each dealing with the unpaid obligations of the State, must be read and construed together. *Wilkin* v. *Special School District of Hazen,* 181 Ark. 1029, 29 S. W. (2d) 267. When thus read, we think there was no intention to give petitioners

the preference in payment which is prayed. On the other hand, we think it more reasonable to hold that the act 229 merely placed petitioners on a basis of equality with other holders of the State's obligations existing prior to January 10, 1933.

The act 229 expresses no purpose to give a preference. In fact, it was enacted to authorize the payment of petitioners' claims out of this sinking fund and pursuant to the provisions of § 4463, Crawford & Moses' Digest, which required the Governor to lay before the General Assembly the fact that there was such a claim, to the end that its payment might be provided for. This the act 229 authorized, and, by virtue thereof, it may be paid in the manner provided by act 5, but not preferentially, for no such legislative purpose was expressed or manifested.

The judgment of the court awarding the writ of mandamus is therefore reversed, and the petition will be dismissed.

JOHNSON, C. J., dissents.