ROBERSON *v.* ROBERSON.

4-4530

Opinion delivered February 22, 1937.

*Terrell Marshall* and *Verne McMillen,* for appellant.
*W. S. Atkins* and *Ned Stewart,* for appellee.

SMITH, J. Appellee recovered judgment against appellant, who is her husband, for the sum of $5,000, to compensate a personal injury sustained by her while riding with him in his car, and this appeal is from that judgment.

As a cause of action, the complaint alleged ''That defendant's negligence consisted in (a) a defective casing; (b) driving said automobile at a high, excessive and dangerous rate of speed.'' It is not questioned that the testimony sufficiently sustained these allegations. The injury occurred August 23, 1934, and the suit was filed August 13, 1935.

Between these two dates the General Assembly of 1935 passed two acts, one No. 61 and the other No. 179. Both acts were passed to regulate the liability of owners or operators of automotive vehicles to guests riding therein. Sections 1 and 2 of act 61 read as follows:

''Section 1. That no person transported as a guest in any automotive vehicle upon the public highways of this state shall have a cause of action against the owner or operator of such vehicle for damages on account of any injury, death or loss occasioned by the operation of such automotive vehicle unless such vehicle was wilfully and wantonly operated in disregard of the rights of the others.

''Section 2. The term guest as used in this act shall mean self-invited guest or guest at sufferance.''

Act 179 substantially re-enacts act 61, with the added provision that ''* * * in no event shall any person related by blood or marriage within the third degree of consanguinity or affinity to such owner or operator, or the husband, widow, legal representative, or heirs of such person, have a cause of action for personal injury, including

death, resulting therefrom, against such owner or operator while in, entering, or leaving such motor vehicle, provided this act shall not apply to public carriers.''

Under the first act the gratuitous guest is denied the right to recover unless the vehicle ''was wilfully and wantonly operated in disregard of the rights of others.'' Under the later act the right of recovery is denied certain persons there named under any circumstances.

It will be observed that the complaint did not allege that ''such vehicle was wilfully and wantonly operated in disregard of the rights of others,'' nor was that issue submitted to the jury.

That a wife riding in her husband's car at his invitation is a guest within the meaning of these statutes is not questioned. Nor is it open to question that before the passage of the acts above mentioned the driver of an automobile was bound to exercise ordinary care in the operation thereof for the safe transportation of occupants therein, whether such occupants were guests by sufferance, or were invited by the driver or by some one else, or were self-invited. It was so held in the case of *Gurdin* v. *Fisher,* 179 Ark. 742, 18 S. W. (2d) 345. This opinion was delivered June 10, 1929, which was, of course, prior to the passage of acts Nos. 61 and 179, *supra.* It was also held in the case of *Katzenberg* v. *Katzenberg,* 183 Ark. 626, 37 S. W. (2d) 696, that a married woman may maintain an action against her husband for an injury as the result of his negligence in the operation of an automobile in which she was a guest. The effect of the opinions in the cases of *Gurdin* v. *Fisher* and *Katzenberg* v. *Katzenberg, supra,* was that a wife, although riding in her husband's car as his guest, might recover judgment against him to compensate an injury to her resulting from his negligent operation of the automobile.

We are asked to reconsider and overrule the Katzenberg case upon the ground that it is contrary to the great weight of authority upon the right of the wife to sue her husband for his negligent injury of her. Many cases are cited in support of this contention. If it be true, as appellant contends, that this case is contrary to the weight of authority, it may be said that in several, at

least, of the states whose holdings on the subject are not in accord with our Katzenberg case, there is absent statutes emancipating married women from the disabilities incident to coverture as broad as those of this state on that subject. The Katzenberg case cites act 159 of the Acts of 1915 and act 66 of the Acts of 1919 of the General Assembly of this state, and that decision is based upon what was thought to be the proper interpretation and application of those acts. We think no error was made in this respect, and the suggestion that we overrule the Katzenberg case is, therefore, denied.

The decision of this case must, therefore, depend upon the validity and application of acts 61 and 179 of the Acts of 1935. Numerous cases in point exist, and their number is rapidly increasing, and this opinion would be almost interminable if we attempted to cite them and distinguish their somewhat conflicting holdings. A general statement of the law appears at § 2313, page 102, Volume 4, Blashfield's Cyclopedia of Automobile Law and Practice (Permanent Edition). It reads as follows: "While statutes of this character, which look primarily to abolition of a guest's remedy for injuries, have been held unconstitutional as violative of constitutional provisions that every man shall have a remedy by due course of law for injury done him in his person, property or reputation, where the legislation emphasizes the restriction on the operator's duties rather than on the guest's remedies, statutes in this form have in general been held good as against constitutional objections, and regarded as a proper exercise of the police power and not violative of the process clause; but statutes of more comprehensive nature which undertake to relieve an automobile operator from all liability for injuries suffered by a nonpaying passenger, whatever the degree of negligence, have been held unconstitutional."

The first case cited in the note to the text quoted holding such legislation unconstitutional, whatever the degree of negligence, is that of Coleman v. Rhodes, 5 Harr. 120, 159 Atl. 649. In that case the superior court of Delaware declared unconstitutional a statute of that state relieving the operator or owner of a motor vehicle from

any liability whatsoever for injuries suffered or sustained by any person while riding with the owner or in the owner's car free of charge. But the same court, in the later case of *Hazzard* v. *Alexander*, 173 Atl. 517, held a later statute of that state constitutional which provided there should be no cause of action against an operator of an automobile for death of, or damage to, a gratuitous guest unless the accident was intentional or caused by willful or wanton disregard of the rights of others.

Under the reasoning of these and other cases cited in the note to the text quoted it might be that act 179 is unconstitutional, whereas act 61 is valid, the difference being that act 179 denies the right of recovery to certain persons under any circumstances, whereas act 61 denies the right of recovery to all persons riding as guests "unless such vehicle was wilfully and wantonly operated in disregard of the rights of others." But if act 61 is constitutional and is applicable to the facts of this case, it is unnecessary to consider act 179 or to pass upon its constitutionality, for the reason that act 61 defeats a recovery in this case, it not being alleged or shown that appellant had wilfully and wantonly operated his car in disregard of the rights of others.

Appellee insists that her cause of action is not defeated by this act 61 for two reasons. First, that the act is unconstitutional, and, second, if constitutional, it cannot be applied to this case for the reason that her injury occurred and her cause of action accrued prior to its passage and that the act cannot be given a retroactive effect, as that intention was not expressed or necessarily implied, as must be true to give the act that effect.

Similar legislation—and there has recently been much of it—is generally held constitutional where the right of recovery is not wholly denied, as in act 179 applied to certain persons. This is true in numerous states whose constitutions are similar to our own.

A case which discusses the evils to be remedied by such legislation and the theory upon which its constitutionality is sustained is that of *Naudzius* v. *Lahr*, 253 Mich. 216, 234 N. W. 581, 74 A. L. R. 1189. Justice FEAD, speaking for the Supreme Court of Michigan,

there said: "It would be threshing old straw to discuss the accepted fact that the motorcar has presented social, financial, and governmental problems which justify the Legislature in reasonably classifying it apart from other vehicles in the enactment of laws. * * * Generally, gratuitous passengers are relatives or friends. * * * In many, probably most, of the cases * * * the real defendant is an insurance company," and that it is not difficult to prove ordinary negligence where guest and host co-operate to that end; that the results of such cases are mirrored in increased insurance rates, which affects the subject with a public interest. Other cases uphold the legislation as a valid exercise of the police power in the regulation and control of traffic upon public highways.

Act 61 does not deny the gratuitous passenger access to the courts, but does define the duty due him and prescribes the character of proof he must make to sustain his action for the injury done him.

The Supreme Court of Oregon held unconstitutional a statute of that state (Laws Ore. 1927, p. 448) which provided that "the acceptance of a free ride as a guest in a motor vehicle shall be presumed to be a waiver of said guest of liability for accidental injury caused by (the) owner or driver of such motor vehicle." *Stewart* v. *Houk,* 127 Ore. 589, 271 Pac. 998, 272 Pac. 893, 61 A. L. R. 1236.

A petition for rehearing was filed in that case, in which the attention of the court was called to the Connecticut case of *Silver* v. *Silver,* 108 Conn. 371, 65 A. L. R. 943, 143 Atl. 240. In an opinion on rehearing the Supreme Court of Oregon, in discussing this Connecticut case, said: "The court interpreted the act as freeing the host from liability to a nonpaying guest for injury caused by ordinary negligence only. Disposing of the specific attack made upon the act, the court held that it was proper for the Legislature to segregate into one class the guest in an automobile as distinguished from all other guests. Since the act preserved liability in instances where the injury was inflicted intentionally, heedlessly, or through reckless disregard for the rights of others,

and withheld liability only to a nonpaying guest for ordinary negligence, the court reasoned that the purpose of the act was to fix the measure of care a host owed to his guest. After observing that the police power of the state is broad enough to include the regulation of automobiles driven upon the public highways, it sustained the validity of the act as a proper exercise of the state's police power.

"In our previous decision we pointed out what we believe are unreasonable features of the Oregon act. It seems to us that these identify our act, not as an effort of the police power to regulate the operation of automobiles by prescribing the duty of host to guest, but as one wherein this element of the situation remains untouched, and the sole change effected is the denial of the remedy to an injured guest. We are persuaded to this conclusion by the fact that all injured guests are denied access to the courts, regardless of their capacity or incapacity to care for themselves, and regardless of the degree of carelessness exhibited by the injuring act. Such being the purpose of the act, we felt it was in conflict with article 1, § 10, of our Constitution. The Connecticut Constitution contains a similar provision. Article 1, § 12. No contention, apparently, was advanced in the Connecticut court that the act violated this constitutional guaranty, and the decision makes no mention of that clause. The reason for this silence, no doubt, lies in the fact that, since the Connecticut act prescribes a degree of care which was deemed reasonable, and thus accomplishes an objective, within the police power of the state, article 1, § 12, was inapplicable. Such provisions, as we pointed out before, prohibit the Legislature from withholding a remedy, where the breach of a well-established duty has injured one who now seeks relief. In our case, the act does not endeavor to readjust the duty, but attempts to abolish the remedy; in the Connecticut case, the act revised the duty, and afforded redress to all injured through a breach thereof.

"We find no conflict between the Connecticut decision and the one we previously announced.

"Petition for rehearing denied."

It will thus be observed that the Supreme Court of Oregon in effect approved the Connecticut case, but distinguished the one case from the other upon the difference in the provisions of the statutes construed, one of which wholly denied the right to sue, while the other prescribed the conditions upon which the suit might be maintained. In this connection it may be said that § 10, of article 1, of the Oregon Constitution and § 12, of article 1, of the Connecticut Constitution, referred to in the Oregon opinion, were said to be, and, in fact, are, similar, and neither is substantially different from § 13, of article 2, of our Constitution, all being to the effect that every person is entitled to a certain remedy in the law for all injuries or wrongs he may receive in his person, property, or character. But both the Oregon and the Connecticut cases recognized the right of the General Assembly, notwithstanding this provision found in the Constitutions of both states, to prescribe a degree of care which was deemed reasonable to accomplish an objective within the police power of the state and, therefore, not prohibited by this provision of the Constitution in either state.

If this Connecticut case of *Silver* v. *Silver* is sound law, as the Supreme Court of Oregon conceived it to be (in which view we concur), it is decisive of the constitutionality of our act 61. In that case the Supreme Court of Errors of Connecticut upheld as constitutional a statute of that state which relieved the owner or operator of an automobile from liability to a guest "unless the accident shall have been intentional on his part or caused by his heedlessness or his reckless disregard of the rights of others." The law of the subject is there fully discussed and many cases are cited and reviewed. The case as reported in 65 A. L. R. 943, *supra,* is extensively annotated.

It was there pointed out, with authorities fully sustaining the statement, that legislation under the police power of the state is not confined to public health, safety, or morals, but may extend to matters in the interest of the public welfare or convenience, and that a large discretion is vested in the Legislature to determine, not only what the interests of public convenience and welfare re-

quire, but what measures are necessary to secure such interests. The court stated that the right of the state, under its police power, to regulate travel upon the public highways was not doubted, and that the regulation of motor vehicles and motor vehicle traffic as a proper subject for legislative action under the police power is not questioned. And it was there further said "Assuming, as we must, the power of the Legislature to regulate the operation of motor vehicles, that includes the power to enact legislation affecting the reciprocal rights and duties of all who use them, owners, operators, or occupants, when these rights and duties arise out of such operation. The duty which the owner or operator owes to his guest in the operation of the automobile being a legitimate subject-matter of legislation, the guest is not deprived of the equal protection of the law, because that duty is made to vary from that owed to a house guest or a guest in some other mode of conveyance. The basis of the classification is the automobile, and the act affects alike all those who may elect to be transported in it as guests of its owner or operator."

The court points out the power of the Legislature to make distinctions as to the degree of care required in different cases and, by way of illustration, said: "Such a distinction between the duty imposed in the case of the gratuitous performance of services and the performance of them for hire is to be found running through many fields of the law, as for example between the gratuitous bailee and the bailee for hire, the common carrier and the private driver, the innkeeper and the ordinary social host. In some jurisdictions it is held that the owner or operator of a motor vehicle is liable to a guest only in the case of gross negligence, in analogy to the rule prevailing in the case of a gratuitous bailment of goods. *Massaletti* v. *Fitzroy*, 228 Mass. 487, L. R. A. 1918C, 264, 118 N. E. 168, Ann. Cas. 1918B, 1088, 18 N. C. C. A. 690. There is inherent justice in the requirement that one who undertakes to perform a duty gratuitously should not be under the same measure of obligation as one who enters upon the same undertaking for pay, and the reason for a distinction between the measure of liability in the case of

a gratuitous bailment and gratuitous transportation is not obvious. It seems to us that the Legislature was acting well within the limits of the police power in making a distinction between the degree of care to be exercised by the owner or operator of a motor vehicle toward a guest and that to be exercised toward one who pays for his transportation.''

This Connecticut case was appealed to the Supreme Court of the United States, where it was affirmed in an opinion by Mr. Justice Stone in 280 U. S. 117, 50 S. Ct. 57, 74 L. Ed. 221, 65 A. L. R. 439.

We conclude, therefore, that act 61 is valid and constitutional.

But does it apply to an accident which occurred before its passage? Appellee insists that it does not, because to so apply it would be to give it a retroactive effect where the intention that it should be so construed is not expressed in the act or necessarily implied. We are cited to our own and other cases to the effect that legislation will not be construed as being retroactive when it may reasonably be construed otherwise. We recognize the authority of these cases, and do not intend in any manner to impair them, but we think that rule of construction does not support appellee's contention.

Act 61 deals with causes of action, which we think means those existing when the aid of the courts is invoked to enforce them. The act provides that ''No person transported as a guest in any automotive vehicle * * *shall have a cause of action against the owner or operator of such vehicle * * * unless such vehicle was wilfully and wantonly operated in disregard of the rights of others.'' The act contains no saving clause as to suits then pending or as to causes of action accruing before its passage, and the act is given a prospective, and not a retroactive, construction when we construe it to apply to such suits thereafter instituted or prosecuted upon a state of facts which the act expressly declares shall not constitute a cause of action. It is an elementary proposition to say that one may not sue who has no cause of action.

If, therefore, act 61 is valid as to injuries occurring after its passage, it is valid also as to injuries occurring

before its passage, if such be the legislative intent, and such interpretation may be applied, where the legislative intent so appears, to an injury occurring before its passage as well as to one after it, for in such a case the plaintiff has no vested right of which she could not be deprived. Justice RIDDICK said in the case of *Steers* v. *Kinsey*, 68 Ark. 360, 58 S. W. 1050: "Now, a vested right 'must be something more than a mere expectation, based upon the anticipated continuance of existing laws. It must have become a title, legal or equitable, to the present or future enjoyment of property,' in some way or another. Black, Stat. Const., 430; Sutherland, Stat. Const., § 164."

We do not mean to say that a final judgment recovered before the cause of action was destroyed by legislative enactment would not be valid. It would be valid, because the judgment would not be "* * * a mere expectation," but would rather be an adjudication which operated to vest the right to compensation and the amount thereof as had been judicially determined. In this connection, the fact may be restated that this suit was not brought until after act 61 had been passed and was in full force and effect.

In the case of *Coombes* v. *Franklin*, 213 Calif. 164, 1 Pac. (2) 992, 4 P. (2d) 157, it was said: "The rule of law in this respect is not in doubt. In *Napa State Hospital* v. *Flaherty*, 134 Cal. 315, 317, 66 P. 322, 323, the court stated the rule as follows: 'It is a rule of almost universal application that where a right is created solely by a statute, and is dependent upon the statute alone, and such right is still inchoate, and not reduced to possession or perfected by final judgment, the repeal of the statute destroys the remedy, unless the repealing statute contains a saving clause.' This rule has been consistently and continuously adhered to since said date. (Citing cases.)"

A vehicle act of the state of California was amended at the 1929 session of the General Assembly of that state by the addition of a section numbered 141 3/4, which denied the right of recovery to guests riding in any

vehicle on the public highways of that state, and provided that if the injury resulted in death that "neither the estate nor the legal representatives or heirs of such guest should have any right of recovery."

It was held by the Supreme Court of that state in the case of *Callet* v. *Alioto*, 210 Cal. 65, 290 Pac. 438, that this act did not prevent a recovery on a cause of action originating before its passage, and that holding was reaffirmed in the later case of *Krause* v. *Rarity*, 210 Cal. 644, 293 Pac. 62, 77 A. L. R. 1327, which cited the former case.

In the later case it was pointed out that this section 141 3/4 contained a proviso to the effect that "Nothing in this section contained shall be construed as relieving the owner or driver or person responsible for the operation of a vehicle from liability for injury to or death of such guest approximately resulting from the intoxication, willful misconduct, or gross negligence, of such owner, driver or person responsible for the operation of such vehicle." It was further provided that "The burden shall be cast upon the plaintiff to establish that such intoxication, willful misconduct, or gross negligence, was the proximate cause of such death or injury or damage." It was said of this act in the case of *Krause* v. *Rarity, supra,* that "It is apparent that, if the new section had been enacted without the proviso, the rule contended for by the defendant Rarity would apply, the plaintiff's cause of action would have been wiped out, and no recovery could be had on the judgment against said defendant, for the reason that said judgment has not become final. In such case the Legislature would have been unrestrained by constitutional barriers, and its intention, in the absence of a saving clause, would have been conclusively manifest. But the Legislature did not stop with the enactment of the portions of the statute which would have worked a repeal irrevocably, but added the provision which in effect continued the right of action on account of the death of the guest. In other words, there has not been a moment of time since the enactment of section 377 to the present time when an action would not lie on behalf of the heirs on account of the death of the

guest. The only change brought about by the new law was in the nature and character of the proof required in each case. There was no abolishment of the right or cause of action, but only a change in the proof required, not to maintain the action, but to permit a recovery." This case has an extensive annotation as reported in 77 A. L. R. 1327 and the annotator's comment upon the case is "* * * had it not been for the proviso in § 141 3/4 it would have worked a repeal which would have destroyed the plaintiff's cause of action, inasmuch as the cause of action was statutory only, and the right was not a vested right protected by the state and Federal Constitutions, but the new law with the proviso changed only the proof required in each case, not to maintain the action, but to permit a recovery." In other words, the proviso was a saving clause which kept in force plaintiff's cause of action. Our statute contains no saving clause.

In the recent case of *State ex rel. Attorney General* v. *Anderson-Tully Co.*, 186 Ark. 170, 53 S. W. (2d) 17, the construction of an act was involved which provided that no proceeding should thereafter be brought or maintained for back taxes except for actual fraud on the part of the taxpayer. The act did not provide that it should be retroactive, yet it was held to apply to suits pending at the time the act became effective, for the reason that a suit could not be maintained on a cause of action which had ceased to exist.

The question is thoroughly discussed in the recent case of *Hazzard* v. *Alexander*, (Del. Super.) 173 Atl. 517, and we will conclude the discussion by a few quotations from it. The General Assembly of the state of Delaware passed a "guest statute" very similar to ours on May 22, 1933. The plaintiff had been injured on April 24, 1932, and filed suit on August 22, 1933, to recover damages. A demurrer to the complaint was sustained, which action was affirmed by the Supreme Court on appeal.

In affirming the action of the lower court in sustaining the demurrer the court accorded recognition—as we do—to the sound rule of construction that a statute should have prospective action only unless its terms plainly show the legislative intention that it shall operate

retrospectively. The Delaware statute, like ours, did not declare that it should be retroactive, but the court held that such was its effect as applied to causes of action which had arisen prior to its passage which had not been reduced to judgment before the repeal of the act. The court said: "The rule that a vested right of action is property just as tangible things are, and is protected from arbitrary legislation, applies to those rights of action which spring from contracts or the common law. 2 Cooley, *supra,* 756; *Collins* v. *East Tenn., etc., R. Co.,* 9 Heisk. (Tenn.) 841; *Butler* v. *Palmer,* 1 Hill (N. Y.) 324; *Krause* v. *Rarity,* 210 Cal. 644, 293 P. 62, 77 A. L. R. 1327; *Bennett, Adm'r,* v. *Hargus,* 1 Neb. 419.

"No one has a vested right in a public law, but the Legislature may repeal or amend all legislative acts not in the nature of contracts or private grants. *Arnold & Murdock Co.* v. *Industrial Commission,* 314 Ill. 251, 145 N. E. 342, 40 A. L. R. 1470; *Wall* v. *Chesapeake & O. R. Co.,* 290 Ill. 227, 125 N. E. 20. As said in *Bailey* v. *School Dist.,* 108 Wash. 612, 185 P. 810, 811.

"There is 'no vested right, prior to judgment, in a policy of legislation which entitled him to insist that the policy be maintained for his benefit;' and the same court said in *Robinson* v. *McHugh,* 158 Wash. 157, 291 P. 330, that where a tort action can be brought only by virtue of a statute, there can be no vested right therein and the Legislature may take away the right at any time."

After quoting the language of this Delaware statute, which provides that "No person * * * shall have a cause of action," the court proceeded to say: "A usual synonym of 'have' is 'possess'. A cause of action remains such until merged into a judgment. From the accrual of the cause, or right, of action, until final judgment, there exists merely a right to prosecute which the statute declares shall not be had or possessed by any person in the circumstances presented here. The view of the Legislature is that suits against owners or operators of automobiles by or on behalf of gratuitous passengers to recover damages arising out of ordinary negligence constitute an evil to be suppressed. Striking directly against that evil, it is not to be supposed that the General As-

sembly, not having incorporated in the act a saving clause, had a certain sympathy for accrued rights of action, but none for actions yet to arise, and therefore purposed to preserve and protect accrued and pending actions.''

Our act 61 contains the same phrase, "That no person shall have a cause of action,'' and as we concur in the construction given it by the Supreme Court of Delaware, the judgment here appealed from must be reversed.

After examining many cases construing "guest statutes'' we have found only one holding such acts unconstitutional where the right of recovery was not wholly denied, but which prescribed only the conditions under which a recovery might be had by defining the degree of care due the guest. This is the case of *Ludwig* v. *Johnson,* 243 Ky. 533, 49 S. W. (2d) 347, decided by the Court of Appeals of Kentucky.

The Constitution of that state contains a section similar to § 13, of article 2, of our Constitution, hereinabove referred to. In addition, the Constitution of Kentucky contains a section numbered 241 reading, in part, as follows: ''Whenever the death of a person shall result from injury inflicted by negligence or wrongful act, then, in every such case, damages may be recovered for such death from the corporations and persons so causing the same.''

The ''guest statute'' of that state applied to all guest passengers who were killed or only injured and denied a recovery of damages in either case ''unless such accident shall have resulted from an intentional act on the part of said owner or operator'' of the automobile. The court was unanimous in holding that the Constitution of Kentucky guaranteed a recovery of damages for death resulting from ordinary negligence or wrongful act, whereas the statute denied that right unless the death resulted from an intentional act, thus imposing the proof of something more than the Constitution required. We have in our Constitution no such limitation upon the power of the General Assembly to regulate automobile traffic. The Supreme Court of Kentucky was divided upon the question whether the ''guest statute'' of that state offended

against other provisions of the Constitution. Judgment reversed and, as the cause appears to have been fully developed, it will be dismissed.

MEHAFFY, J., dissents.

BUTLER, J., concurs in the judgment.